ROBERT ELLIOTT, JR., AS TRUSTEE IN BANKRUPTCY OF
WAVERLY CREAMERY ASSOCIATION, v. HARRY ADECKES
AND OTHERS.[1]

July 31, 1953.

No. 36,003.

*Janes, Janes & Dudley, Gordon Cain,* and *John F. Arneson,* for
appellant.

*Oscar A. Nordquist,* for respondent Delano Cooperative Creamery
Association.

---

[1]Reported in 59 N. W. (2d) 894.

*Sullivan, Stringer, Donnelly & Sharood,* for certain respondents.

*Carroll & Thorson* and *Louis A. McCarthy,* for respondent Brunswick Cooperative Creamery Association.

*Gleason, Ward, Orff & Johnson,* for respondent Tom Devaney.

FRANK T. GALLAGHER, JUSTICE.

Appeal from the following judgments of the district court: One dated June 3, 1952, that the defendants named therein recover certain statutory costs and clerk's fees from plaintiff; one dated June 16, 1952, that plaintiff take nothing against defendants named therein and that defendants recover certain costs and disbursements; and one dated November 17, 1952, that plaintiff take nothing against defendants named therein.

Plaintiff is the trustee in bankruptcy of Waverly Creamery Association, a co-operative association incorporated on September 21, 1932, under L. 1923, c. 326 (now M. S. A. c. 308 in part), which association is referred to hereinafter as Waverly. Defendants named in the caption of the case in the trial court number 132 individuals, ten co-partnerships, and two other co-operative creamery associations. Plaintiff seeks to recover from the various defendants alleged overpayments made to them by Waverly for milk, cream, and other dairy products delivered to Waverly by the respective defendants during the years 1947, 1948, and part of 1949. The action is for a declaratory judgment so construing the articles of incorporation and bylaws of Waverly that defendants be found entitled to receive from Waverly only the difference between its costs of operation and its cash receipts during the respective year by periods and not the current market price paid them by Waverly for the particular products involved; and also to have any payment to any member or patron in excess of that amount construed to be an overpayment to which Waverly and its trustee in bankruptcy are entitled to have returned as in excess of that to which such member or patron was lawfully entitled.

From September 21, 1932, until September 20, 1949, Waverly was engaged in the business of processing milk and cream for its

patrons and members and making it into butter, cheese,. and other dairy products. It received the milk and cream from its patrons and members and paid them each month a sum of money equal to the units of butter fat multiplied by the then current market value. Plaintiff alleges in his complaint that during 1947, 1948, and 1949 Waverly paid its members and patrons on account of milk and cream delivered by them to Waverly $31,483.01, $11,281.42, and $8,811.28, respectively, in excess of the difference between its cash receipts for sales and its operating expense. He contends that the sole question before this court is a determination of the basis on which Waverly was to make payment to its patrons and members for milk and cream delivered· by them for processing. Plaintiff argues that the determination of this basis depends upon the legal relationship between Waverly and its members and patrons, which must be determined by the applicable law and provisions of the articles and bylaws of Waverly. He further contends that the possible legal relationship can be broadly classified as follows: (1) That Waverly received milk and cream from its members and patrons as their agent for the purpose of processing the milk and cream into finished products and Waverly therefore should account to its principals for the proceeds of the operation; (2) that Waverly acted as buyer of the products from its members and patrons, who would then be in the position of sellers to receive payment at a price fixed at the time of delivery or to be fixed in such manner as might be agreed upon; or (3) that Waverly acted as trustee of the products received and processed them for its members and patrons as beneficiaries of the trust.

Plaintiff assigns as error: (1) That the trial court erred in holding that the complaint failed to state a cause of action and in ordering judgment entered on defendants' motion for judgment on the pleadings; and (2) that the judgments entered are erroneously entered, inasmuch as plaintiff claims that the complaint states a cause of action and that there are no findings that the allegations of the complaint are not true.

It would appear from the record that the basic and controlling facts are not in serious dispute. For the most part they are embodied in the pleadings, consisting of the articles of incorporation, the 1947 amendment to those articles, the bylaws, the alleged excess payments, and the admissions of the various defendants. Some of the defendants by their joint and several answer admitted the basic allegations of the complaint and asserted a setoff for the amounts set opposite their respective names on exhibit A if the trial court held any of the defendants indebted to plaintiff. Other individual defendants answered by way of general denial. Still other individual defendants admitted a number of the allegations of the complaint but asserted a sale and purchase of the products involved. The amended answer of defendant Brunswick Cooperative Creamery Association, after a general denial of liability to plaintiff for any amount, asserted a written contract between it and Waverly governing the purchase and sale of whole milk at an agreed price, to which plaintiff replied alleging that the contract was terminated and a new contractual relationship was entered into between Waverly and the Brunswick company. The amended answer of Delano Cooperative Creamery Association asserts the relationship between it and Waverly during the period in question to be that of buyer and seller and that a purchase and sale was made of all milk products or other products delivered to Waverly by the Delano company during the time in question. Defendant Tom Devaney, in his separate answer, also contended that his dealings with Waverly during the period in question constituted sales and delivery at an agreed price, with title of his products passing to Waverly upon delivery. Plaintiff's reply to Devaney's answer denied such a sale.

L. 1923, c. 326, § 1 (M. S. A. 308.05), under which Waverly was organized as a co-operative association, as far as pertinent here, provides that a co-operative association may be formed for the purpose of conducting any agricultural, dairy, marketing, commission, or warehousing business upon the co-operative plan. It also provided:

"* * * and in addition to other powers, *such co-operative association, shall have the power either as agent or otherwise to buy, sell or deal in its own products,* the products of its individual members or patrons, the products of any other co-operative association or of its members or patrons, whether such co-operative association be organized under the provisions of this act or otherwise." (Italics supplied.)

It also empowered such co-operative association to enter into or become a party to any contract or agreement, either for itself or for its individual members or patrons, or between it and its members. For the purposes above stated, such co-operative associations were empowered and authorized to purchase and hold, lease, mortgage, encumber, sell, exchange, and convey real estate, buildings, and personal property as the business may require and also to erect buildings or other structures or facilities upon its own lands or leased land or upon a right of way legally acquired. Such co-operative associations were also empowered and authorized to issue bonds and to borrow money to finance the business, provided that the indebtedness so incurred did not exceed the limit of indebtedness fixed in the articles of incorporation. Other powers and provisions not necessary to recite here were contained in the law for the purpose of enabling such co-operative associations to function as a going business.

With reference to the express powers conferred upon Waverly by its articles of incorporation, art. 1 provides:

"The name of this cooperative association shall be the Waverly Creamery Association. The purpose of this association shall be to engage in a dairy, manufacturing and marketing business upon the cooperative plan. *The general nature of its business shall be the receiving and buying of milk, cream and other products of the farm, and the manufacture, marketing and selling of butter, cheese, ice cream and other dairy and farm products,* and the handling and sale of dairy and farm supplies. * * * and it shall also have power and authority, either for itself or its individual members and patrons, to do and perform every act and thing necessary and

proper to the conduct of its business or the accomplishment of the purposes set forth therein or permitted by the act under which this association is incorporated." (Italics supplied.)

Under these articles Waverly was empowered (a) to receive and buy milk, cream, and other farm products; (b) to manufacture, market, and sell butter, cheese, ice cream, and other dairy and farm products; and (c) to handle and sell dairy and farm supplies.

We are concerned primarily with the first power, inasmuch as it is involved in the claim asserted by the complaint and in the several answers thereto. In paragraph 9 of the complaint it is asserted that Waverly's way of doing business was to accept delivery of milk and cream from its members and patrons and to deliver to them a sum of money each month equal to the number of units of butter fat and other dairy products so received by Waverly multiplied by the then current market value of the butter fat and other dairy products.

Article VIII, § 1, of Waverly's bylaws provides in part:

"Patrons shall be paid, at least once a month, and oftener if the board of directors shall so order, for the milk or cream delivered to the association during the preceding period."

The manner in which Waverly conducted its business in this respect appears to have been supported and required by article VIII, § 1.

Defendants argue that, despite plaintiff's vague and abstract statements concerning the legal issue involved, the sole question for determination on this appeal is whether the contractual relationship between Waverly and its patrons and members, as found in the statutes under which it was organized and under which it operated, its articles of incorporation, and its bylaws, was one of agency, as contended by plaintiff, or one of purchaser and seller, as contended by defendants. The trial court held that the relationship was one of purchaser and seller.

After a careful examination of L. 1923, c. 326 (M. S. A. 308.05 to 308.18), under which Waverly was organized and under which it operated, as well as its articles of incorporation and bylaws, it is

our opinion that the contractual relationship between Waverly and the various defendants was one of purchaser and seller. An example of this relationship seems to us to be found in the record in the written contract entered into between Waverly and Brunswick Cooperative Creamery Association, one of the defendants. In that contract Waverly agreed—

"* * * to buy all of the whole milk from the Brunswick Coop. Cry. Ass'n, for a period of six months from this first day of December, 1948, or longer, paying 23% over New York 92 score butter, with an advance payment of 80% of delivery weekly."

Article 1 of the articles of incorporation provides that the purpose of Waverly was to engage in a dairy, manufacturing, and marketing business on a co-operative plan; that the general nature of its business shall be the receiving and buying of milk, cream, and other products of the farm and the manufacture, marketing, selling, and handling of dairy and farm products. The article also provided that Waverly should have the power and authority to own, operate, manage, and control creameries and cream stations and to do and perform, for itself and its individual members and patrons, every act and thing necessary and proper to the conduct of its business or the accomplishment of the purposes set forth therein or permitted by the act under which Waverly was incorporated.

It is apparent under the language of L. 1923, c. 326, § 1, that a co-operative association organized and operating under this chapter can either engage in a pooling operation or purchase the product outright from its producer members or patrons. Under the circumstances here, we do not consider it necessary to go into any lengthy, detailed discussion of the various types of co-operative associations. It appears from the cases, however, that the first, or so-called pooling co-operative, operates under a marketing agreement whereby it provides a marketing service for the products produced by its members by pooling their products and selling them at a time when the management of the co-operative association deems it advantageous to do so, depending on the condition of the market. Generally under this plan the pool is sold collectively. After deducting the

expenses of the entire pool operation, the proceeds are distributed among the various producers in proportion to their respective contribution of products to the pool. See Minnesota Wheat Growers Co-op. Marketing Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420, wherein it appears that the association involved was that type of marketing co-operative. The second type above referred to is the co-operative association which is set up for the purpose of purchasing the commodities, such as milk or cream, produced by its members or patrons, taking title thereto, and paying for them at the market price current at the time of delivery. Ordinarily, it then processes the raw products into a manufactured article such as butter or cheese and sells the processed or manufactured article at a time and price demanded by the requirements of the particular business conducted by the co-operative. In our opinion, Waverly was organized and functioned as that kind of co-operative.

As evidence that Waverly operated under the second plan, art. 8, § 1, of its bylaws provided that patrons should be paid at least once a month, or oftener if the board of directors so ordered, for the milk or cream delivered to the association during the preceding month.

From a practical standpoint it would seem obvious that because of their perishable nature in their raw state the handling of dairy products such as milk and cream would have to differ in respect to marketing from the handling of grain or wool, for example. The former would have to be processed in some form shortly after it was received at the creamery, while the latter could remain in a pool in its original state for months awaiting a favorable selling market.

We therefore hold that the contractual relationship between Waverly and its patrons and members, as found in the statute under which the association was organized and under which it operated, its articles of incorporation and bylaws, as well as the pleadings before us, was one of purchaser and seller. To hold otherwise, under the facts and circumstances here, would in our opinion tend to defeat the co-operative creamery system. As we see it, few farmers, as patrons or members of such a co-operative association,

would be interested in delivering dairy products to a creamery on the basis claimed by plaintiff, namely, that they would be entitled to receive from the creamery the proportionate share of the difference between costs of operation and cash receipts during each calendar year, such difference to be apportioned among the members and patrons in proportion to the amount of butter fat delivered during such calendar year. Neither would they be interested in a plan which might be construed later, as requested by plaintiff, as requiring that any payment to any member or patron in excess of that amount be considered an overpayment which might be collected from the patron or member by the creamery association or its trustee in bankruptcy at some later date.

M. S. A. 300.27, subds. 2 and 3, relating to exemptions from stockholders' liabilities and their application, were added by L. 1931, c. 210, after the double liability of stockholders of certain Minnesota corporations was eliminated in 1930. Except as provided in part in § 300.27, subd. 1, that stockholders were liable for unpaid installments on stock owned or transferred for purposes of defrauding creditors, subd. 2 provides:

"* * * no stockholder * * * of any cooperative corporation or association, however or whenever organized, * * * shall be liable for any debt of such * * * cooperative corporation, or association."

While the provisions are not exactly in point, plaintiff's request, as asserted here, to have the articles and bylaws of Waverly so construed as to have members or patrons return the excess to Waverly or its trustee in bankruptcy would seem repugnant to the provisions of the statute above referred to.

It is our opinion, under L. 1923, c. 326, and the articles of incorporation under which Waverly was incorporated and under which it functioned, that it had the power, either as an agent or otherwise, to buy, sell, or deal in any of its own products and the products of its individual members or patrons or the products of any other cooperative association, or its members or patrons, whether such cooperative association was organized under the provisions of the act or not.

As stated in Clinton Coop. Farmers Elev. Assn. v. Farmers U. G. T. Assn. 223 Minn. 253, 256, 26 N. W. (2d) 117, 120:

"* * * The words 'either as agent or otherwise' are, it seems to us, all-inclusive and cover the capacity of defendant to buy in any manner it sees fit. If we were to adopt plaintiff's construction of the statute, we should be required to read the word 'otherwise' out of it. There is nothing in the statute to indicate that the legislature intended that the word 'otherwise' should be ignored or given any other meaning than the usual one. To us the language is perfectly plain. It is not ambiguous and calls for no interpretation."

The judgments of the trial court are affirmed.
Affirmed.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.